# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW STASZAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-0812-MJR-SCW |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION

Plaintiff brought his complaint against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (hereinafter "FTCA"), alleging that Deputy U.S. Marshal Clark Meadows used excessive force against him (Count 1) and that Deputy U.S. Marshals Kevin Castleman and James Robertson failed to prevent the assault (Count 2). This matter is before the Court on Defendant's partial motion for summary judgment on Count 2 of Plaintiff's complaint (Doc. 47). Plaintiff has filed a response (Doc. 50). Defendant has filed a reply (Doc. 51). Based on the following, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's partial motion for summary judgment.

## FACTUAL BACKGROUND

This case, which was initially filed in the United States District Court for the Eastern District of Arkansas, was transferred to this Court on April 6, 2015 (Doc. 1). Plaintiff's complaint was filed pursuant to the FTCA against the United States of America. Plaintiff alleges that U.S. Marshal Clark Meadows committed an assault and battery against Plaintiff when he handcuffed Plaintiff and then punched him in the face. Plaintiff further alleges that U.S. Marshals Kevin Castleman and James Robertson failed to prevent the alleged assault and battery. The summary judgment motion focuses solely on Castleman's and Robertson's failure to prevent the attack by Meadows.

At the time the events at issue took place, Plaintiff was on an ankle monitoring system issued by District Judge J. Phil Gilbert as a part of Plaintiff's bond. *See United States v. Staszak*, **Case No. 12-cr-40064-JPG, at Doc. 15 (June 28, 2012)**. That bond was later revoked because Plaintiff removed his ankle monitoring system with a pair of bolt cutters (Doc. 47-2, p. 4). Additionally, Plaintiff failed to appear at the revocation hearing so an arrest warrant was issued (*Id.*). *See also* **Case No. 12-cr-40064 at Docs. 39, 40, and 41.** Plaintiff removed the ankle monitor on October 2, 2012 and an arrest warrant was issued on October 4, 2012 (*Id.*).

Plaintiff was arrested in the early morning hours of June 2, 2013 by Meadows, Castleman, and Robertson at the Rameses Bar (Doc. 47-2, p. 8). Plaintiff testified that he was sitting on a barstool when the Marshals came in to arrest him (*Id.* at p. 10). Meadows approached Plaintiff in the lead with the other two Marshals following

behind (*Id*.). Plaintiff testified that Meadows approached him and he felt Meadows' hands slam down on his shoulders (*Id*.). Plaintiff testified that Meadows then threw him from the barstool onto the ground, with Plaintiff lying face down on the ground (*Id*.). Castleman testified that both he and Meadows placed Plaintiff on the ground from the barstool (Doc. 47-3, p. 2). He also testified that he assisted Meadows in handcuffing Plaintiff (*Id*. at p. 3). Robertson acknowledged that he assisted in making sure that no patrons interfered with Plaintiff's arrest (Doc. 47-4, p. 3). Robertson testified that he did not see Plaintiff being taken down or handcuffed because his back faced them while he faced the patrons (*Id*. at p. 3-4).

Plaintiff testified that after Meadows put Plaintiff on the ground, chaos broke out in the bar (Doc. 47-2, p. 11). He heard one of his friends, who he came to the bar with, arguing with one of the Marshals and he could hear Castleman and Robertson telling everyone in the bar to stand back (*Id*.). Meadows cuffed Plaintiff and flipped him over (*Id*.). Plaintiff testified that Meadows then punched him in the face four times (Id.). At the time the incident occurred, Plaintiff testified that Robertson and Castleman were worried about crowd control and that they were not helping Meadows with the arrest (*Id*.). The other two Marshals did not help until after Meadows and another Marshal lifted Plaintiff off of the ground, although he does not recall which Marshal helped Meadows (*Id*.). Plaintiff testified that he believed the other two Marshals should have intervened by arresting Meadows after he punched Plaintiff (*Id*. at p. 12). But Plaintiff testified that Castleman and Robertson were controlling the crowd at the time that

Meadows punched Plaintiff and that the punches happened in quick succession, one after the other (*Id.*). Plaintiff testified that he did not believe that Castleman or Robertson could have stopped the actual punches as they were conducting crowd control and the timing of the punches was very quick (*Id.*).

LEGAL STANDARDS

**A. Summary Judgment Standard**

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Id.* at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of

material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

**B. Federal Tort Claims Act**

The FTCA "permits an individual to bring suit in federal court against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Palay v. United States*, 349

**F.3d 418, 425 (7th Cir. 2003).** Thus, Plaintiff's claim under the FTCA must be one that is recognizable under Illinois Law.

As Plaintiff alleges that Castleman and Robertson failed to intervene during the use of force that Meadows used against Plaintiff, Plaintiff must establish that the Marshals were negligent in failing to prevent the assault. In an action for negligence under Illinois law, a plaintiff must demonstrate that "that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Abrams v. City of Chicago*, **811 N.E.2d 670 (Ill. 2004)** (*citing Harrison v. Hardin County Community Unit School District No. 1*, **758 N.E.2d 848 (Ill. 2001);** *First Springfield & Trust v. Galman*, **720 N.E.2d 1068 (Ill. 1999)).** While proximate cause is usually an issue of fact for the finder of fact, "it is well settled that it may be determined as a matter of law by the court where the facts as alleged show that the plaintiff would never be entitled to recover. *Abrams*, **811 N.E.2d 670 (***citing Harrison*, **758 N.E.2d 848;** *DiBenedetto v. Flora Township*, **605 N.E.2d 571 (Ill. 1992)).** Proximate cause has two elements: cause in fact and legal cause." *Id.* at 674-75 (**citing** *Galman*, **720 N.E.2d. 1068;** *Lee v. Chicago Transit Authority*, **605 N.E.2d 493 (Ill. 1992);** *Palay*, **349 F.3d at 432.** A defendant's conduct is the "cause in fact" if it is a material element and substantial factor leading to the injury that occurred. *Abrams*, **811 N.E.2d at 675.** Thus, without the conduct of the defendant, the plaintiff would not have suffered the injury alleged. *Id.* On the other hand, conduct is the "legal cause" if it was reasonably foreseeable. *Id.* (*citing Galman*, **720 N.E.2d 1068; Lee, 605 N.E.2d 493);**

*Palay*, 349 F.3d at 432.

## ANALYSIS

The Court first notes that Plaintiff's complaint, as well as his testimony in his deposition, indicates that he believed Castleman and Robertson were negligent in failing to intervene because they failed to arrest or report Meadows actions after the fact. But as the Defendant points out, there is no such connection between the Marshals' failure to report or arrest Meadows and the injuries that Plaintiff received as a result of Meadows' assault and battery. Nor does Plaintiff argue in his response that such actions which were, or were not, taken after the alleged assault could constitute a negligent failure to intervene on the part of Castleman and Robertson. Thus, to the extent Plaintiff's complaint maintains that Castleman and Robertson failed to intervene by failing to report or arrest Meadows after the event in question, the Defendant is entitled to summary judgment.

Turning to Plaintiff's claim that Castleman and Robertson were negligent in failing to intervene or protect Plaintiff from the assault by Meadows, the Court finds that Defendant is entitled to summary judgment on the claim related to Robertson. There is no evidence in the record from which a finder of fact could find that Robertson could have intervened and stopped Meadows. Plaintiff specifically testified that the two Marshals were conducting crowd control and did not participate in the actual handcuffing of Plaintiff. Plaintiff further testified that the punches happened in quick succession and that he did not believe that either Marshal could have stopped Meadows

given the fact that they were conducting crowd control.[1] Robertson also testified that he was dealing with other individuals in the bar during the arrest and had his back to Meadows and Plaintiff (Doc. 47-4, p. 3). There is nothing in the record to suggest that Robertson could have intervened in Meadows' assault on Plaintiff as he was not near Plaintiff and Meadows when the assault took place. As such, the Court finds no evidence of proximate cause, that Robertson's failure was a cause in fact of Plaintiff's injuries, as there is no evidence that Robertson had the opportunity to stop the punches from Meadows.

Plaintiff argues that there are issues of fact which prevent summary judgment because Plaintiff testified that Castleman and Robertson could have "absolutely" intervened. But Plaintiff's cherry-picked quote is taken out of context. When Plaintiff was asked how the Marshals could have "absolutely" intervened, Plaintiff testified that Castleman and Robertson should have "placed that Deputy United States Marshal immediately under arrest for his actions." (Doc. 47-2, p. 12). His testimony does not suggest that either Marshal could have stopped Meadows from punching him. In fact, Plaintiff specifically stated that neither Marshal could have actually stopped the punches from Meadows because they were conducting crowd control (Doc. 47-2, p. 12 (answering "no" when asked if either Castleman or Robertson could have stopped the

---

[1] Plaintiff's testimony in his deposition reflects that he did not believe either Marshal could have stopped Meadows from punching Plaintiff:
    Q:  So do you think, based on how you remember the punches and how you remember Castleman and Robertson conducting crowd control, do you think that they could have actually stopped the alleged punches from occurring?
    A.  No.
(Doc. 47-2, p. 12).

punches from occurring)).

However, as to Castleman, the Court finds that there are issues of fact which prevent summary judgment at this stage. While Plaintiff testified that Castleman was helping with crowd control and did not participate in his arrest, Castleman actually testified that he assisted Meadows in Plaintiff's arrest. Castleman testified that he grabbed Plaintiff by the left shoulder and Meadows grabbed Plaintiff's right shoulder and they took Plaintiff to the ground (Doc. 47-3, p. 2). Castleman further testified that he participated in the handcuffing of Plaintiff (Doc. 47-3, p. 2-3). Thus, Castleman's testimony puts him right beside Meadows at the time that Meadows punched Plaintiff (and for purposes of this motion, the Court assumes, in the light most favorable to Plaintiff, that Meadows did, in fact, punch Plaintiff). While Castleman testified that the arrest happened in a short amount of time, as little as thirty seconds, and Plaintiff testified that Meadows' punches came in quick succession, given Castleman's proximity to Meadows, a reasonable finder of fact could find that Castleman had the ability to intervene at some point during the four punches delivered by Meadows. Given that he failed to intervene, a reasonable finder of fact could find Castleman negligent if he saw the punches and failed to respond. The Court recognizes that Castleman testified that he did not see any punches thrown (*Id.* at p. 3). But at this stage, there is enough evidence regarding Castleman's participation in the arrest, such that he would have seen the punches by Meadow, to prevent summary judgment.

Plaintiff also argues that both Marshals should be denied summary judgment

because they were aware of Meadows' propensity for violence and failed to prevent Meadows from leading the arrest of Plaintiff.  However, the Court finds no evidence to suggest that the two Marshals were aware of Meadows' propensity for violence as Plaintiff suggests in his response.  Plaintiff argues that because Castleman and Robertson had worked with Meadows for many years the finder of fact could infer that they were aware of Meadows' particular temperament and that they were aware of a prior incident involving Meadows and Plaintiff.  Plaintiff testified in his deposition that he previously encountered Meadows and his "aggressive" temperament when he had a previous run-in with Meadows at the Benton Federal Courthouse (Doc. 47-2, p. 9). Plaintiff testified that Meadows served Plaintiff with a warrant for arrest on that occasion and that he was aggressive during the arrest, putting his hands on Plaintiff, turning him around and being very rough with him (*Id.*).  But Plaintiff did not testify that either Castleman or Robertson were present during this incident.  In fact, Plaintiff testified that he had no previous issues with either Marshal (*Id.*).

While the Court must draw all inferences in Plaintiff's favor, such inferences do not extend to speculation or conjecture.  ***Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).**  The Court finds no evidence from which a reasonable inference could be drawn that Castleman and Robertson were aware of this prior incident as there is no evidence that they were present during the incident or that Meadows told them about the incident afterwards.  Nor is there any evidence in the record to show that either Marshal was aware of any "aggressive" temperament or other past actions of Meadows.

While both Marshals testified that they worked together for many years, Plaintiff fails to point to any evidence or testimony regarding Meadows' particular temperament or the Marshals' knowledge of such a temperament.  As such, there is no evidence from which a finder of fact could conclude that Castleman and Robertson were aware of Meadows temperament such that Meadows' assault was reasonably foreseeable and required the two Marshals to prevent Meadows from leading the arrest on Plaintiff.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's partial motion for summary judgment.  The Court **GRANTS** summary judgment as to the claim involving Robertson but **DENIES** summary judgment as to the claim involving Castleman.  The only claims which remain in this case are Plaintiff's claim regarding the force used by Meadows and Plaintiff's claim regarding Castleman's failure to intervene.

**IT IS SO ORDERED**.
DATED: October 31, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge